UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-2311 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| EXTERRAN CORPORATION, MARK R. | : **SECURITIES EXCHANGE ACT OF** |
| SOTIR, ANDREW J. WAY, WILLIAM M. | : **1934** |
| GOODYEAR, JAMES C. GOUIN, JOHN P. | : |
| RYAN, CHRISTOPHER T. SEAVER, | : **JURY TRIAL DEMANDED** |
| HATEM SOLIMAN, IEDA GOMES YELL, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Exterran Corporation ("Exterran" or the "Company"), the members Exterran's board of directors, and Enerflex Ltd., Inc. and its affiliates ("Enerflex" collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Exterran and Enerflex.

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form F-4 (the "Registration Statement") to be filed on March 18, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Enerflex US Holdings, a direct wholly owned subsidiary of Enerflex ("Merger Sub"), will merge with and into Exterran with Exterran surviving as a direct wholly owned subsidiary of Enerflex (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into dated January 24, 2022 (the "Merger Agreement"), each Exterran stockholder will receive 1.021 shares of Enerflex common stock (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own approximately 27.5% of the combined company and Enerflex shareholders will own approximately 72.5% of the combined company.

3. As discussed below, Defendants have asked Exterran's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Wells Fargo Securities LLC ("Wells Fargo") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Exterran's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Exterran is traded on the New York Stock Exchange, which is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Exterran stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Mark R. Sotir has served as a member of the Board since October 2015 and is the Executive Chairman of the Board.

11. Individual Defendant Andrew J. Way has served as a member of the Board since 2015 and is the Chief Executive Officer of the Company.

12. Individual Defendant William M. Goodyear has served as a member of the Board since 2015.

13. Individual Defendant James C. Gouin has served as a member of the Board since 2008.

14. Individual Defendant John P. Ryan has served as a member of the Board since 2015.

15. Individual Defendant Christopher T. Seaver has served as a member of the Board since 2015.

16. Individual Defendant Hatem Soliman has served as a member of the Board since 2019.

17. Individual Defendant Ieda Gomes Yell has served as a member of the Board since 2015.

18. Defendant Exterran is a Delaware corporation and maintains its principal offices at 11000 Equity Drive, Houston, Texas 77041. The Company's stock trades on the New York Stock Exchange under the symbol "EXTN."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

21. Exterran, a systems and process company, provides various solutions in the oil, gas, water, and power markets worldwide. The Company operates through three segments: Contract Operations, Aftermarket Services, and Product Sales. It offers compression, processing, and treating services through the operation of natural gas compression equipment, and crude oil and natural gas production and process equipment; and water treatment and power generation

solutions. The Company also sells parts and components; and provides operation, maintenance, repair, overhaul, upgrade, startup and commissioning, and reconfiguration services. In addition, it designs, engineers, manufactures, sells, and installs equipment used in the treating and processing of crude oil, natural gas, natural gas compression packages, and water treatment, including cryogenic plants, mechanical refrigeration and dew point control plants, condensate stabilizers, wellheads, gatherings, residue and high pressure natural gas compression equipment, water treatment equipment, integrated power generation, and skid-mounted production packages for onshore and offshore production facilities. Further, the Company sells custom-engineered and built-to-specification natural gas and oil processing and treating equipment; and skid-mounted natural gas compression equipment and pre-engineered compressor units. It serves integrated oil and natural gas companies, national energy companies, and independent oil and natural gas producers, as well as oil and natural gas processors, gatherers, and pipeline operators. The company was founded in 1954 and is headquartered in Houston, Texas.

22. On January 24, 2022, the Company and Enerflex jointly announced the Proposed Transaction:

> CALGARY, Alberta and HOUSTON, Jan. 24, 2022 (GLOBE NEWSWIRE) -- Enerflex Ltd. ("Enerflex" or the "Company") (TSX: EFX) and Exterran Corporation ("Exterran") (NYSE:EXTN) today announced a business combination (the "Transaction") to create a premier integrated global provider of energy infrastructure. The company will operate as Enerflex Ltd. and will remain headquartered in Calgary, Alberta, Canada. Through greater scale and efficiencies, the transaction will strengthen Enerflex's ability to serve customers in key natural gas, water, and energy transition markets, while enhancing shareholder value through sustainable improvements in profitability and cash flow generation.
>
> The companies will combine in an all-share transaction pursuant to which Enerflex will acquire all of the outstanding common stock of Exterran on the basis of 1.021 Enerflex common shares for each outstanding share of common stock of Exterran, resulting in

approximately 124 million Enerflex common shares outstanding upon closing, representing an implied combined enterprise value of approximately US$1.5 billion. The transaction value for Exterran is approximately US$735 million, which represents an 18% premium to Exterran's enterprise value as at January 21, 2022. The transaction value paid for Exterran implies an EV/2022E Adjusted EBITDA of 3.6x and Price/2022E Cash Flow of 1.9x, including synergies, respectively. Upon closing of the Transaction, Enerflex and Exterran shareholders will respectively own approximately 72.5% and 27.5% of the total Enerflex common shares outstanding. Enerflex will continue to trade on the Toronto Stock Exchange ("TSX") and intends to apply to either the New York Stock Exchange (the "NYSE") or the NASDAQ exchange ("NASDAQ") for the listing of Enerflex common shares to be effective upon Transaction close.

"This is an exciting day in the history of our companies. The Transaction is immediately accretive to shareholders; enhances our presence, offerings, and scale across our regions; and importantly, executes upon our years-long strategic goal of increasing recurring revenues to improve the profitability and resiliency of our platform," said Marc Rossiter, Enerflex's President and Chief Executive Officer. "Enerflex and Exterran each have a long history of global expertise in the delivery of modular energy solutions. Together, we are more efficient and better positioned in global capital markets. The Transaction will improve our ability to partner with an expanded set of customers to solve their growing energy infrastructure challenges with integrity, creativity, commitment, and success."

"We are excited about the ability to create shareholder value through this Transaction and improving our product and service offering. The scale and efficiencies this combination brings is the right path for Exterran and brings significant opportunities for accelerated growth in produced water treatment and energy transition products and services," said Andrew Way, President and Chief Executive Officer of Exterran.

**Strategic Rationale**

- **Creates a Premier Integrated Global Provider of Energy Infrastructure:**

  o Highly complementary product lines, geographies, and asset bases provide enhanced scale, efficiencies, and expanded offerings for customers.

6

- o   The pro forma geographic exposure will be well-balanced with approximately 25-35% of revenues from each of North America, the Middle East, and Latin America.

- **Accelerates Growth of Gross Margin from Recurring Segments:**

- o   Combination significantly accelerates the generation of predictable, recurring gross margin from energy infrastructure and after-market services platforms.

- o   Over 70% of the combined entity's gross margin will derive from recurring sources, strengthening its margin profile and reducing cyclicality.

- **Improved Operational Efficiencies:**

- o   Expect to realize at least US$40 million of annual run-rate synergies within 12 to 18 months after closing through overhead savings and operating efficiencies.

- **Accretive to Shareholders:**

- o   Expected to approximately double Adjusted EBITDA and be over 50% accretive to cash flow per share and approximately 50% accretive to earnings per share (subject to purchase price allocation to be determined upon closing), for Enerflex shareholders.

- o   Enhanced scale with pro forma 2023E Adjusted EBITDA of US$360 million to 400 million, inclusive of synergies.

- o   Meaningful excess free cash flow beginning in 2023 that supports debt reduction, shareholder returns, and continued growth.

- o   After close, Enerflex expects to maintain its quarterly dividend of CAD$0.025 per common share.

- **Transaction Benefits From a Long-Term, Stable Capital Structure:**

- o   The combined entity will benefit from a capital structure that provides ample liquidity.

- o   In conjunction with the Transaction, Enerflex has entered into a binding agreement with the Royal Bank of Canada to provide Enerflex with a fully committed financing consisting of a US$600 million 3-year revolving credit facility and a US$925 million 5-year bridge loan facility. The bridge loan will provide financing to backstop an anticipated issuance of new debt securities prior to closing of the Transaction. The committed financing is sufficient to fully repay existing Enerflex and Exterran notes and revolving credit facilities and support putting in place a new capital structure,

- provide for capital expenditures and other ordinary course capital needs, and provide significant liquidity for the pro forma business.
  - The new revolving credit facility will be subject to a bank-adjusted total net debt to EBITDA covenant of 4.5x, stepping down to 4.0x by the fourth quarter of 2023.
  - Enerflex targets a bank-adjusted net debt to EBITDA ratio of 2.5x - 3.0x within 12 to 18 months of closing.
  - Following capital project commitments in 2022, the combined entity's capital allocation in 2023 onwards will prioritize: (i) balance sheet strength; (ii) sustainable shareholder returns; and (iii) disciplined growth focused on full-cycle earnings.

- **Commitment to Sustainability:**
  - Aligns strong cultures emphasizing the health and safety of our global workforce and corporate citizenship.
  - Global coverage enhances the ability to deliver sustainable natural gas, water, and energy transition solutions, including carbon capture utilization and sequestration, biofuels (including renewable natural gas), produced water reuse and recycling, and electrification.

\* \* \*

### Governance and Leadership

One Exterran director will be appointed to Enerflex's Board of Directors at closing. Mr. Marc Rossiter will continue to serve as Enerflex's President and Chief Executive Officer and a member of the Board of Directors of Enerflex and will oversee all aspects of integration. Mr. Sanjay Bishnoi will continue to serve as Enerflex's Chief Financial Officer. Enerflex's Executive Management Team will continue to serve in their current roles.

### Timing and Approvals

The Transaction is expected to close in the second or third quarter of 2022, subject to, among other things: the approval of the Transaction by Exterran stockholders; the approval by Enerflex shareholders of the issuance of Enerflex common shares pursuant to TSX requirements in connection with the Transaction; regulatory approvals; and other customary closing conditions, including those of the TSX and the NYSE or NASDAQ, as applicable.

Copies of the Transaction agreement and related materials will be filed by Enerflex with the Canadian securities regulators and will be

available for viewing under Enerflex's profile on www.sedar.com. Enerflex shareholders are urged to read the information circular once available as it will contain important information concerning the Transaction.

**Support for the Transaction**

The Boards of Directors of Enerflex and Exterran have each unanimously approved the Transaction and recommend that their respective shareholders vote in favour of the Transaction.

All of the funds managed by Chai Trust Company, LLC that own common stock of Exterran and all of Exterran's directors and officers have entered into voting agreements with Enerflex pursuant to which they have agreed to vote their respective shares in favour of the Transaction at the meeting of Exterran shareholders.

All of the directors and officers of Enerflex have entered into voting agreements with Exterran pursuant to which they have agreed to vote their respective Enerflex common shares in favour of the issuance of Enerflex common shares pursuant to the Transaction at the meeting of Enerflex shareholders.

**Operational Update – Enerflex**

"The timing is right for this Transaction as it strengthens our positioning while global energy markets recover from the pandemic-induced lows. Natural gas is a transition fuel that, together with renewables, will lead the world toward a lower carbon future. The world's continued reliance on natural gas is evidenced by strong fourth quarter 2021 Engineered Systems bookings of over CAD$300 million, our highest bookings quarter since 2018," said Rossiter. "This month, we also successfully commissioned a gas infrastructure facility in the Middle East that will further strengthen our asset ownership portfolio. The recovery remains widespread, and we are optimistic that overall market strength will continue in 2022."

**Operational Update – Exterran**

"We expect fourth quarter results to be in-line with our guidance provided on our third quarter call. Net debt and cash flow for the fourth quarter were favorable to our forecast, putting us in a good position as we enter the new year. The macro environment continues to be supportive of strong bookings in the first half of 2022," said Way. "We continue to execute well on our two water ECO projects

along with the large processing facility in the Middle East, all of which are expected to commence operations on time."

**Conference Call Conference Call Details**

Enerflex will host a conference call today, January 24, 2022 starting at 6:30 am MST (8:30 am EST). To participate, please call toll free 1.844.231.9067 or 1.703.639.1277. Please dial in 10 minutes prior to the start of the call. No passcode is required. The live audio webcast of the teleconference will be available via www.enerflex.com. The webcast will be archived for approximately 90 days.

An investor presentation has been posted and is available on Enerflex's website under the Investors section.

**Advisors**

RBC Capital Markets is acting as exclusive financial advisor to Enerflex and has provided an opinion to Enerflex's Board of Directors to the effect that the consideration to be paid under the Transaction is fair, from a financial point of view, to Enerflex and is subject to the assumptions made as well as the limitations and qualifications, which will be included in the written opinion of RBC Capital Markets.

Norton Rose Fulbright US LLP and Norton Rose Fulbright Canada LLP (transaction counsel) and Davies Ward Phillips & Vineberg LLP and Cravath, Swaine & Moore LLP (financing counsel) are acting as Enerflex's legal advisors.

TD Securities and Scotia Capital acted as strategic advisors to Enerflex.

Wells Fargo Securities, LLC is acting as exclusive financial advisor to Exterran.

King & Spalding LLP and McCarthy Tétrault LLP are acting as Exterran's legal advisor.

\* \* \*

23. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Exterran's stockholders are provided with the material information that has been

omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **The Materially Incomplete and Misleading Registration Statement**

24. On March 18, 2022, Exterran and Enerflex jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Wells Fargo in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the Company's management and Enerflex's management prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and Wells Fargo with forming a view about the stand-alone valuation. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that the companies provided to the Board and Wells Fargo. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can

come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company and Enerflex Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fourth quarter 2021 through 2025: EBITDA, and Unlevered Free Cash Flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

29. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Exterran*

30. With respect to Wells Fargo's *Exterran Selected Public Companies Analysis*, the Registration Statement fails to disclose: (i) why only Enerflex and Exterran were selected as comparable companies; (ii) how Exterran is considered a comparable company as Exterran; and (iii) the metrics and multiples for each selected comparable company.

31. With respect to Wells Fargo's *Exterran Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the financial metrics and multiples for the transactions selected for the analysis.

32. With respect to Wells Fargo's *Exterran Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) line items used to calculate Exterran's unlevered free cash flows; (ii) the inputs and assumptions underlying the use of the illustrative perpetuity growth rate of 1.0% to 2.0%; and (iii) the inputs and assumptions underlying the discount rates ranging from 13.5% to 14.5%.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Enerflex*

33. With respect to Wells Fargo's *Enerflex Selected Public Companies Analysis*, the Registration Statement fails to disclose: (i) why only Enerflex and Exterran were selected as comparable companies; (ii) how Enerflex is considered a comparable company as Enerflex; and (iii) the metrics and multiples for each selected comparable company.

34. With respect to Wells Fargo's *Enerflex Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the financial metrics and multiples for the transactions selected for the analysis.

35. With respect to Wells Fargo's *Enerflex Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) line items used to calculate Exterran's unlevered free cash flows; (ii) the inputs and assumptions underlying the use of the illustrative perpetuity growth rate of 1.0% to 2.0%; and (iii) the inputs and assumptions underlying the discount rates ranging from 10.0% to 11.0%.

36. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Exterran within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Exterran, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Exterran, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Exterran, and, therefore, is presumed to have had the

power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

47. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 22, 2022         **MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*